**LENA GOCHENOUR HARDESTY v. DOLORES HARDESTY, et al.**
31 So. (2nd) 60                                           June Term, 1947
June 24, 1947                                               Division B

Alfred A. Green, for appellant.

Maguire, Voorhis & Wells for Dolores Hardesty, by her Guardian Ad Litem, H. M. Voorhis and Horace D. Riegle for Helen Jane Hardesty and Walter C. Hardesty, III, through their Guardian Ad Litem Horace D. Riegle, for appellees.

BARNS, J.:

This is an appeal from a final decree of dismissal of Bill of Review instituted by Lena G. Hardesty (wife of the late Walter C. Hardesty, Jr., now deceased), the primary purpose of which was to set aside a divorce decree granted her said late husband by the same Court because of matters not appearing on the record in the divorce suit, one of which matters was the fact that the plaintiff-husband in the divorce suit had purposely withheld the decree from record after it was signed by the Judge and it was not recorded until after his death.

The appellant, Lena Gochenour Hardesty, and Walter C. Hardesty, Jr., now deceased, were married at Monterey, Virginia, on the 12th day of August, 1937, and lived together as man and wife to the date of the death of Walter C. Hardesty, Jr., on September 23rd, 1945, except for periodic visits of the appellant to the home of her mother. There were two children born to the couple, Walter C. Hardesty, III, and Helen Jane Hardesty, both of whom are minors. The appellant prior to her marriage was a school teacher; since that time she has been a housewife and mother. The deceased, for many years immediately preceding the date of his death, practiced law.

On the 1st of May, 1945, appellant with the two children left Florida for one of her usual visits with her mother; the husband expected and desired them to return to Florida after the visit, as did the appellant, and the trip was made with the husband's full knowledge and consent.

After appellant's departure on May 1, 1945, there appeared on the scene in Daytona Beach, Florida, a young woman named Barbara seeking a divorce. She retained appellant's husband

as a council and established her residence at the hotel he maintained in Daytona Beach in connection with his home and office. The two were infatuated with each other and the "affair" progressed so rapidly that on the 21st of May, 1945, the husband wrote appellant hinting that she should stay with her mother for the remainder of the year; and on the 2nd of June, 1945, one month after appellant's departure, he wrote her in detail as to his "affair."

He describes in the letter of June 2, 1945, the physical attractions of his paramour, her philosophy of life, her background, desires and habits. He then states to his wife, that if the girl became pregnant he wanted a divorce; but if she did not, the romance would probably terminate in September and his wife and children would be expected back in Daytona Beach at that time.

The affair continued and on the 13th of August, 1945, he filed a bill for divorce in the Circuit Court for Baker County, Florida, even though he resided in Volusia County, his witnesses were in Volusia County and the defendant was in Virginia.

The record clearly shows that throughout the entire course of events from the date he decided to secure a divorce until his death he had no intention of recording the final decree and having it become effective to dissolve the marriage between appellant and himself except on certain contingencies.

The deceased husband induced appellant to allow the suit to proceed without an actual defense as to the suit. The appellant, having little business experience, was in a highly disadvantageous position, as her husband was a lawyer, a man of strong will and well versed in business affairs. He knew that appellant was wrapped up in the two children; and knowing this, he, by letters and 'phone calls, had appellant understand that she and the children would suffer in case she contested the proceedings. At the time this took place, she and the children were away; she was sick in heart and spirit, and she had been for years so much under the domination of her husband, that she was afraid to oppose him.

An example of deceased's tactics can be seen by the following excerpt from a letter he wrote her:

"I am trusting that you will not quibble any more and sign the papers and get your divorce over with too. In previous correspondence I promised you that the decree would not be recorded among the public records. In this way if Barbara and I do not hit it off o. k. then we will forget Barbara and let her go back to New York and the retrace that she was in and you and I will go on as usual with Helen and Walter. If you will sign promptly the papers and get them down here by Sunday to Mr. Grant, I will be able and have time to stop and see you all on September 5th for several days as I am scheduled to appear in New York on September 9th, and must go thru with my plans. If you have not signed the papers please do so at once and mail to Mr. Grant.

"If you don't sign the papers, don't look for any more letters from me. I am putting you on the spot."

A decree of divorce was signed by the Chancellor, on September 1, 1945, and given by him to the husband, who did not file it for recordation, but placed it among his personal papers and took it with him to Washington, D. C., on September 5th, 1945, when he went to visit appellant and their two small children.

On September 9th, 1945, the husband and Barbara met in New York, and the husband then returned to appellant-wife in Washington. Thereupon they made a trip to New York where they lived together for two days at the Hotel Roosevelt—although they occupied adjoining rooms. Appellant, while the husband remained in New York to finish some business matters, returned to Washington on September 19th, 1945, to gather her belongings preparatory to returning to Florida with him. Upon the return of the husband to Washington on September 23rd, 1945, and before they could return to Florida to recommence their home life, he suddenly became ill and died testate on September 23, 1945.

At the husband's death the final decree of divorce was still in his possession; it had never been filed for record; and appellant found it unrecorded among his personal affects. Thereupon appellant consulted her brother-in-law, an attorney at Elkton, Virginia, and acting upon his suggestion mailed the signed but unrecorded decree to the "Circuit Court, Baker

County, Florida," with the request that it not be filed as there was no intention that this was to be done and as the appellant and deceased prior to his death had become reconciled.

Upon the return of the signed decree by appellant, it was on October 12th, 1945, filed in the office of the Clerk by the Judge of the Court and was recorded on that date in Chancery Order Book.

On final hearing on the pleadings and evidence the Bill of Complaint was dismissed. It is our conclusion that under the facts and circumstances that the Chancellor erred in dismissing the bill—the equities were with the complainant-appellant.

Reversed.

THOMAS, C. J., BUFORD and ADAMS, JJ., concur.